**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-01691-MSK-MJW**

**UNITED STATES OF AMERICA,
STATE OF CALIFORNIA,
STATE OF DELAWARE,
STATE OF FLORIDA
STATE OF ILLINOIS,
STATE OF INDIANA,
STATE OF NEVADA,
STATE OF NEW MEXICO,
STATE OF NEW YORK,
STATE OF TENNESSEE,
COMMONWEALTH OF MASSACHUSETTS
COMMONWEALTH OF VIRGINIA, and
THE DISTRICT OF COLUMBIA,
ex rel. JOHN HENDRIX,**

       **Plaintiffs,**

**v.**

**J-M MANUFACTURING COMPANY, INC., and
FORMOSA PLASTICS CORPORATION, USA,**

       **Defendants.**

_____

**OPINION AND ORDER OVERRULING OBJECTIONS AND AFFIRMING ORDER
QUASHING SUBPOENAS**

_____

       **THIS MATTER** comes before the Court pursuant to Defendants J-M Manufacturing

Company's ("J-M") Objections **(# 68)** to the January 26, 2012 Order **(# 66)** of Magistrate Judge

Watanabe, granting the Plaintiffs' Motions to Quash **(# 1, 7)**, Defendant Formosa Plastics Corp.'s

("Formosa") joinder **(# 69)** in those Objections, the Plaintiffs' response **(# 71)**, and J-M's reply

**(#3).**[1]

## FACTS

This proceeding is collateral to a *qui tam* action pending between the parties in the United

States District Court for the Central District of California ("the California action").   In that action,

the Plaintiffs allege that J-M falsely represented that the PVC plastic pipe it manufactured, and

subsequently sold to the Plaintiffs, conformed to certain industry standards.   The Plaintiffs

contend that, in reality, the pipe manufactured by J-M used inferior materials and improper

manufacturing techniques, resulting in products that exhibit reduced lifespans compared to pipe

manufactured in conformance with industry specifications.

The instant matter before this Court concerns two discovery subpoenas served by J-M upon

Microbac, Hauser Laboratories ("Microbac").   Shortly after the filing of this action, the United

States of America retained Microbac to perform tests on samples of J-M's pipe, in order to

ascertain whether the United States should intervene in this matter.   J-M's subpoenas seek

production of Microbac's test results, as well as other records in Microbac's possession related to

such testing.

The Plaintiffs have moved to quash **(# 1, 7)** the subpoenas pursuant to Fed. R. Civ. P.

45(c)(3)(A)(iii), arguing that the communications between the United States and Microbac

(including the test results themselves) are privileged as attorney work product. J-M responded **(#**

**30)**, arguing that the United States waived any privilege by voluntarily disclosing to J-M certain

information about the tests (including that J-M's pipe had "passed" the tests); that the test results

are not privileged because they do not reveal the United States' attorneys' mental impressions or

---

1 Also pending is J-M"s Motion for Ruling **(# 74)** on its Objections. That motion is denied as moot in light of the issuance of this Order.

opinions; and that even if the requested materials are privileged, J-M is nevertheless entitled to discovery them because the material is not otherwise available, as the tests conducted destroyed the samples involved.

The Court referred the matter to Magistrate Judge Watanabe, and on November 30, 2011, Judge Watanabe issued an Order **(# 43)** granting in part and denying in part the Plaintiffs' motions to quash.   Specifically, Judge Watanabe found that "the actual test report dated November 2, 2009,"[2] was "non-opinion work product" because "there is no risk of . . . strategic disclosures being made by disclosing the actual test report."   Judge Watanabe further found that J-M cannot replicate the testing conducted on the pipe, and that samples similar to those tested are no longer available. He noted that "the actual test report goes directly to the representations made by the Relator . . . that 'every piece of pipe' made by Defendant over the last 20 years was nonconforming."   However, Judge Watanabe concluded (without making any specific findings) that other documents, described only as "bates stamped numbers 001 through 008," "are protected by Attorney-Client privilege and subject to the Common Interest Doctrine and Joint Prosecution Agreement." Thus, he quashed J-M's subpoenas with regard to these latter documents.

The Plaintiffs promptly sought reconsideration **(# 45)** of the Magistrate Judge's Order, explaining that developments in the California case had changed the landscape somewhat. There, the Defendants had moved to bifurcate questions of the falsity of J-M's representations to customers from other matters in the case.   In briefings and argument concerning that request, a dispute arose between the parties as to the particular contours of the Plaintiffs' claims.   The Defendants contended that the Plaintiffs' theory was that <u>all</u> of its pipes were improperly manufactured, such that tests conducted on <u>any</u> sample would be probative as to the merits of the

---

2 Judge Watanabe described this material as being those pages Bates stamped TP00006961 through TP00006963.

Plaintiffs' claims.   The Plaintiffs, on the other hand, contended that J-M's false representations were that all of its pipe was manufactured in the same way (*i.e.* in conformance with industry standards), when, in fact, not all pipes were manufactured the same way.   Under the Plaintiffs' theory, then, a given sample of pipe was a "lottery ticket," possibly manufactured properly, possibly not.

In its order addressing bifurcation, the court in California acknowledged that the Plaintiffs were pursuing this "lottery ticket" theory (and, apparently implicitly rejected the Defendants' "every piece of pipe [was the same]" characterization of the Plaintiffs' theory).   Because the Magistrate Judge had specifically predicated his decision on the "every piece of pipe" theory, the Plaintiffs requested that the Magistrate Judge reconsider it in light of the California court's subsequent apparent endorsement of the "lottery ticket" theory.

On January 26, 2012, the Magistrate Judge issued an Order **(# 66)** granting the Plaintiffs' request for reconsideration and vacating the November 30, 2011 Order partially quashing the subpoenas.   In light of the California court's bifurcation order, Judge Watanabe found "a compelling reason to reconsider" his prior order.   He noted that he had previously found that J-M "had demonstrated a compelling need for the actual test report" because it bore directly on the "every piece of pipe" theory, but that "in light of the bifurcation order, he found that "J-M has not demonstrated a compelling need sufficient to overcome the work product protection."   As a result, he granted the Plaintiffs' motions to quash in their entirety.

J-M, joined by Formsa, filed timely Objections **(# 68, 69)** to the January 26, 2012 Order, arguing: (i) to the extent the test results are indeed privileged, the Defendants' substantial need for them outweighs the Plaintiffs' interest in avoiding disclosure; (ii) the Plaintiffs waived any

privilege in the information by voluntarily disclosing the substance of the test results to J-M; and (iii) the test results are not privileged in any event because they are factual information that does not reveal any attorney impressions or opinions.

## ANALYSIS

### A. Standard of review

Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

### B. Work-product privilege

The parties do not disagree as to the general principles that govern this matter. Fed. R. Civ. P. 26(b)(3)(A) provides that "a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by . . .another party or its representative (including the other party's attorney . . .)." However, that rule is subject to an exception: if the requested material would, but for its status as attorney work product, be otherwise discoverable and the party seeking its production shows "that it has substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means," the work product privilege can be overcome. Fed. R. Civ. P. 26(b)(3)(A)(i), (ii). The party asserting the privilege – here, the

Plaintiffs – bear the burden of demonstrating its applicability.   *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2012).

The rule exists to "shelter[ ] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* at 1184.   Thus, it applies only to the extent necessary to protect "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories, authored in anticipation of litigation."   *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006).   Courts recognize a distinction between "opinion work product," which may be entitled to complete protection, and "non-opinion" or "fact work product," that may be discoverable under the Rule 26(b)(3) exception.   *In re Qwest Communications Intern., Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006).   The party asserting the privilege – here, the Plaintiffs – bear the burden of demonstrating its applicability.   *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2012).

1. Is the material subject to a privilege?

The most logical analysis of the issue requires the Court to take the Defendants' arguments in the opposite order in which they are presented in the Objections, beginning with their argument that the subpoenaed materials are not subject to a privilege because they do not reveal the Plaintiffs' attorney's mental impressions or opinions.

The Defendants make only a perfunctory[3] argument that the requested material "embodies only facts resulting from scientific testing" that, "by definition . . . do not reveal any attorney's mental impressions, conclusions, opinions or legal theories."   This Court, having had the opportunity to review the same materials submitted to Judge Watanabe for *in camera* review,

---

3 The Court is mindful that the Defendants are forced to argue about the contents of documents they have not seen, and thus, they cannot be expected to point out specific content within the documents that support their contentions.

disagrees.

Two categories of documents have been submitted for review.   Documents identified as Exemplar *In Camera* 001 through 008 reproduce e-mail exchanges between attorneys for the United States, State of California, and the Relator.   Among the things discussed in those e-mails are the types of tests to be conducted (and the reasons for choosing certain tests) and discussion of the samples to be used (and the reasons for choosing certain samples).   The Court finds no error in Judge Watanabe's conclusion that these exchanges disclose the attorney's mental impressions and potential theories, and thus, represent privileged work product.

The second category of documents are six pages, identified both as Contested *In Camera* 001 through 008 and bearing Bates numbers of TP 00016743, 00016747, 00016751, and 00006961-6963.   The first three pages are essentially transmittal documents,[4] and are neither privileged (nor even arguably relevant).   The remaining three pages consist of Microbac's November 2, 2009 test report.   That report describes, among other things, the samples tested (including the complete "printline" on the samples, which, the Court assumes, would permit the parties to specifically identify the date, location, and circumstances of manufacture); the test methodology; a chart showing certain result data for each sample tested; what appears to be some general conclusions drawn by Microbac from that data; and a graph that the Court assumes reflects plotting of certain test data.

The Magistrate Judge correctly determined that, in large part, the test results themselves constitute non-opinion work product.   The test results, of themselves, simply reflect matters of historical fact.   However, the Court concludes that those portions of the report that describe the

---

4  The document marked as Exemplar In Camera 001 or Bates number TP00016743 also includes an isolated representation that "the final sample failed at [a particular threshhold]."   That single factual representation is also included in the test result report, and thus, the Court does not entertain it separately.

samples to be tested and the tests to be performed do reflect, to some degree, the mental

impressions or opinions of the counsel involved.   The selection of a particular test methodology

or testing sample or set of samples to test could, in circumstances where the available choices are

sufficiently numerous and distinct,[5] permit one to draw inferences as to the reasons why one

option was selected over another; those inferences, in turn, could reveal attorney opinions,

theories, or strategies. *See Vardon Golf Co. v. BBMG Golf, Ltd.*, 156 F.R.D. 641, 648 (N.D.Ill.

1994) (facts relating to which types of golf clubs were selected for testing by Defendant during

litigation were protected by work product privilege; " the pattern of selection by Dunlop's attorney

may reveal a great deal about Dunlop's assessment of its own liability").   This, in turn, throws

new light on the purely "factual" test results – the fact that a certain test produced results in a

certain range, or using certain units of measurement might reveal the particular test or

methodology that was selected over other potential tests, which, for the reasons discussed above,

permits inferences as to matters of attorney opinion.

> Accordingly, the Court finds no error in the Magistrate Judge's conclusion that the

documents at issue constituted protected work product.

> 2.   Did the Plaintiffs waive the privilege?

> The work product privilege can be waived.   *Qwest*, 450 F.3d at 1186.   A waiver arises

when the party discloses the material "in a way inconsistent with keeping it from the adversary."

*Salem Financial, Inc. v. U.S.*, 102 Fed.Cl. 793, 796 (Fed. Cl. 2012), *quoting U.S. v. Massachusetts*

*Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997).

---

5 The Defendants contend that the tests conducted by the Plaintiffs were "industry standard" tests, such that any person with knowledge of such standards and practices in the industry would know the tests being performed.   Based on its review of the tendered documents, which include discussions about various test standards and methodologies for approaching such tests, this Court cannot say that the Plaintiffs' choice of tests to be performed did not involve some level of assessment, analysis, and strategic selection.

Here, the Defendants contend that the United States waived any privilege in the documents relating to the test by virtue of a series of correspondences between the United States Attorney and J-M's counsel in 2006.   In that correspondence, the U.S. Attorney discussed the general outline of tests the United States intended to conduct, including specifying particular samples of pipe (by name and number, from specified plants and shifts, produced on a specified date) upon which the specified tests would be conducted. J-M agreed to provide the government with the samples it requested.

However, it appears that the discussions fell apart before testing was conducted.   In a June 18, 2007 letter to J-M's counsel, the U.S. Attorney states that J-M "complete[ly] fail[ed] to produce the pipe" samples requested by the government, and that as a result, "it is impossible to perform the tests that the government intended to conduct."   The record does not reflect further discussions between the United States and J-M about testing.   The government has produced an affidavit of Mary Inman, one of the Plaintiffs' counsel, who attests that although the Plaintiffs did ultimately submit samples of J-M's pipe for testing, "the pipe samples . . . submitted to Microbac for testing were obtained from [a] source . . . different from those provided by J-M that are described in the correspondence."   Nothing in the record refutes Ms. Inman's contention that the pipe samples actually tested are different from the samples discussed between the United States and J-M.

On this record, this Court cannot conclude that the Magistrate Judge erred in rejecting the contention that the United States had waived any work product privilege in the testing records.   A waiver argument would have merit if the United States proceeded to obtain and test the very samples discussed in the correspondence with J-M.   But Ms. Inman's unrebutted testimony is that

the samples the United States tested were "different" than "those discussed" with J-M.   In other words, it appears that, when discussions with J-M over an joint testing protocol broke down, the United States devised a new, different testing protocol that it implemented privately.   The Defendants might speculate that this new protocol did not differ significantly from that discussed in the correspondence, but such speculation is insufficient to overcome the logical inference to be drawn from Ms. Inman's affidavit that the United States tested different samples than those it had mentioned in the correspondence.

To the extent the matter is illuminated by review of the tendered documents themselves, the record suggests that the Plaintiffs' position is correct. The e-mail exchange in the Examplar In Camera documents discusses the source of the pipe that the United States sent to Microbac for testing, and it appears that this source was not J-W itself.   Moreover, as best the Court can determine (given the lack of detail on this point in the record), the tests actually performed by Microbac do not appear to be the particular tests referenced, for example, in the last paragraph of the U.S. Attorney's June 18, 2007 letter to J-W.   The Defendants do not contend that the United States has ever disclosed the testing protocol it chose to actually use

Thus, the Magistrate Judge's implicit finding that the United States did not waive its work product privilege in the testing protocol or its results is fully consistent with the record.

3.   Do the Defendants have a substantial need for the privileged material?

Finally, the Defendants argue that even if the test results are otherwise subject to the work product privilege, that privilege must yield, pursuant to Rule 26(b)(3)(A)(i) and (ii), to the Defendants' substantial need to obtain the information.

To obtain discovery of privileged work product material under the exception in Rule

26(b)(3), the party seeking discovery must demonstrate: (i) the material is otherwise discoverable under Rule 26(b)(1); (ii) the party has a "substantial need" for the materials to prepare for trial; and (iii) the party cannot obtain the substantial equivalent of the material without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(i), (ii).   The Magistrate Judge initially found that the Defendants had made such a showing with regard to the documents identified as Bates number TP00006961 through TP00006963 – that is, the test report itself, but later concluded, upon reconsideration, that the Defendants had failed to make such a showing.

Although this Court does not have the benefit of particular findings by the Magistrate Judge explaining how the sufficiency of the Defendants' showing changed, this Court can draw certain inferences.   Judge Watanabe's November 2011 Order expressly acknowledged the "every piece of pipe" theory that he understood the Plaintiffs to be pursuing, and thus, concluded that test results favorable to J-M on <u>any</u> piece of pipe would be relevant to rebut that theory.   However, upon being advised of the California court's adoption of the Plaintiffs' "lottery ticket" theory, Judge Watanabe reversed himself.   This suggests that he concluded that the test results were <u>irrelevant</u> under the "lottery ticket" theory.   The Court further assumes, then, that the Magistrate Judge reconsidered and quashed the subpoenas upon a finding that the requested material was not "otherwise discoverable under Rule 26(b)(1)," as required by Rule 26(b)(3)(A)(i), because the test results were no longer "relevant to a party's claim or defense" under Rule 26(b)(1).

This conclusion is correct.   By proceeding under a "lottery ticket" theory, the Plaintiffs have limited the scope of the case significantly, such that only the testing of the actual pieces of pipe purchased by the Plaintiffs can be relevant.   Put differently, the Plaintiffs' contention appears to be that <u>some</u> pipe manufactured by J-M did indeed conform to standards, but that substantial

quantities of pipe purchased by the Plaintiffs did not.   Thus, a test that reveals that a particular sample of pipe was properly-manufactured does not shed any particular light on the question of whether other pipe delivered to the Plaintiffs was defective.   (Using the "lottery ticket" analogy, selecting a ticket randomly from a batch and discovering that it is a loser does not provide any meaningful guidance in determining which ticket from that batch is the winner.)

The Defendants argue that the test results are nevertheless relevant, even under a "lottery ticket" theory, because proof that some of its pipe conformed to industry standards is "highly probative of whether [the] pipe [supplied to the Plaintiffs] deviated from industry standards to such a degree as to constitute fraud."   *Docket* # 68 at 12 (emphasis in original).   The Court understands this argument to suggest that, even if there is proof that some pipe delivered to the Plaintiffs contained some manufacturing defects, the Defendants intend to argue that such defects are the exception to the general rule that most of its pipe conformed to industry standards (and thus, that the Defendants' representations as to the quality of that pipe was not consciously fraudulent).   Without considering the validity of this argument, the Court notes that, thanks to the burden of proof resting on the Plaintiffs in the California case, the Defendants already enjoy a built-in presumption that their pipe is properly-manufactured.   In other words, the Plaintiffs bear the burden of proving their accusation that particular quantities of J-M's pipe was defective, and whenever the Plaintiffs cannot produce evidence supporting that accusation (*i.e.* that a particular lot of pipe was defective), the absence of evidence requires the jury to draw the opposite inference: that any pipe not affirmatively shown to be defective must therefore have been proper.   Thus, if the Defendants are correct that the testing at issue yielded results favorable to J-M, there is no logical difference between the jury knowing that the testing on those particular samples favored

J-M and the jury <u>inferring</u> that fact because the Plaintiffs failed to put on evidence of tests on those samples that produced results unfavorable to J-M.

Thus, the Court finds that the Magistrate Judge committed no error in concluding that the Defendants did not demonstrate an entitlement to the subpoenaed information under the "substantial need" theory.

## **CONCLUSION**

For the foregoing reasons, the Defendants Objections (**# 68, 69**) to the Magistrate Judge's Order (**# 66**) are **OVERRULED**, and the Court **AFFIRMS** that Order.   The Plaintiffs' Motions to Quash (**# 1, 7**) are **GRANTED**.   J-M's Motion for Ruling (**# 74**) is **DENIED AS MOOT**. There being no further proceedings to be conducted before this Court with regard to this matter, the Clerk of the Court is directed to close this case.

Dated this 4th day of February, 2013.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge